UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | |
| Gregory Barrington Simon, | : | Case No. 5:23-02100–MJC |
| | : | |
| Debtor. | : | |
| | : | |

# O P I N I O N

Before the Court is the United States Trustee's ("UST") motion to dismiss the Debtor's bankruptcy case pursuant to 11 U.S.C. §707(a) and/or §707(b)(3)(B)[1] alleging that the Debtor has acted in bad faith by, *inter alia,* being a "serial filer" and improperly overstating his allowed expenses. The Debtor responded by indicating that the repeated bankruptcy filings were due to the Debtor's efforts to save his house from foreclosure, and that expenses as listed on his bankruptcy schedules were proper.

For the reasons set forth below, the Court concludes that cause exists to find (i) that the Debtor's case be dismissed under §707(a) and §707(b)(3)(A) and (B); and (ii) a bar to refiling another bankruptcy case for a period of 180 days is appropriate.

## I. JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334 and the Standing Order of Reference of the U.S. District Court for the Middle District of Pennsylvania dated March 11, 2016. The matters before the Court are core proceedings pursuant to 28 U.S.C. §157(a), (b)(1) and (2)(A) and (J). Venue is proper pursuant to 28 U.S.C. §§1408 and 1409.

---

[1] Unless otherwise noted, all future statutory references are to the Bankruptcy Code, 11 U.S.C. §101, *et seq.*, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 37 ("Bankruptcy Code").

This Opinion constitutes the findings of fact and conclusions of law made under Fed. R. Bankr. P. 7052, which is applicable to this contested matter pursuant to Fed. R. Bankr. P. 1017(f) and Fed. R. Bankr. P. 9014.

## II.  PROCEDURAL HISTORY

On September 14, 2023, Gregory Barrington Simon ("Debtor") filed a voluntary petition for relief ("Petition") under Chapter 13 of the Bankruptcy Code.[2]  Dkt. # 1.  He filed his schedules, statements, and other required documents on September 27, 2023.  *See* Dkt. # 24-28.  On October 26, 2023, Debtor filed an Amended Motion to Convert Case to Chapter 7.  Dkt. # 47.  On November 1, 2023, the Court granted the Motion to Convert.  *See* Dkt. # 49.  On November 30, 2023, Debtor filed amended Schedules I and J listing his monthly income and expenses.  Dkt. # 54 and 55.

On March 26, 2024, Debtor's mortgage servicer, Fay Servicing, filed a motion seeking relief from the automatic stay ("Motion for Relief"), in order to commence or continue a state court foreclosure of Debtor's residence located in Stroudsburg, Pennsylvania ("Residence").  *See* Dkt. # 72.  The Motion for Relief asserted that Debtor owes $577,781.39 and failed to make 6 post-petition mortgage payments totaling $14,286.36 through March 1, 2024.  The Court granted the Motion for Relief, without opposition, on May 2, 2024.[3]  *See* Dkt. # 82.

On March 29, 2024, the UST filed the Motion for an Order Dismissing Debtor's Chapter 7 Case Pursuant to 11 U.S.C. §§707(a) and/or 707(b)(3)(B) with a One-Year Bar to Refiling

---

[2]  Due to the Debtor's failure to file certain required documents, the case was dismissed on September 27, 2023. Dkt. # 18.  Debtor filed a Motion to Reinstate Case and then 2 additional amended motions.  *See* Dkt. # 20 - 22.  The case was reinstated by Order dated October 6, 2023.  Dkt. # 36.  The Court notes that even after cautioning Debtor's counsel, the docket is littered with numerous amended pleadings filed by the Debtor.

[3]  The Motion for Relief indicates that the original loan was extended on February 2, 2004 in the amount of $296,590.  *See* Dkt. # 72-4.  Accordingly, although the loan is almost 20 years old, the amount owed is almost $300,000 more than the original amount of the loan.  The relief from stay request for non-payment of the mortgage, as discussed more fully below, will factor into the Court's analysis relating to the "good faith" of the Debtor to be in a Chapter 7 bankruptcy case.

2

("Motion to Dismiss"). Dkt. # 73. On April 16, 2024, Debtor filed an Amended Answer to the Motion to Dismiss ("Answer"). Dkt. # 78. On April 18, 2024, the Court held an evidentiary hearing on the Motion to Dismiss and ordered that post-hearing briefs be submitted.[4] *See* Dkt. # 80. The UST and Debtor have filed their briefs, *see* Dkt. # 83 and 85, and this matter is now ripe for decision.

### III. FINDINGS OF FACT[5]

As indicated above, Debtor originally filed this case under Chapter 13 on September 14, 2023. *See* Dkt. # 1. Debtor filed his schedules, statements, and other required documents on September 27, 2023. *See* Dkt. # 24-28. On his schedules, Debtor listed his Residence as having a value of $525,000 and encumbered with a mortgage in the amount of $556,359. *See* Dkt. # 25, Sch. A/B, D. He also owns a 2012 Nissan Murano with a value of $1,500. *See Id.*, Sch. A/B. Debtor listed unsecured claims on Schedule E/F totaling $20,753.90, including tax debt to the Internal Revenue Service of approximately $13,000. *See Id.*, Sch. E/F.

On Schedule I, Debtor indicated that he is retired and his monthly income of $7,610.75 is derived from social security and retirement/pension benefits. *See Id.*, Sch. I. On Schedule J, Debtor listed a $2,300 monthly mortgage obligation and other monthly expenses that total $5,109. *See Id.*, Sch. J. Accordingly, his net monthly income is $2,501.75. *See Id.* Debtor listed three dependents who live with him at his Residence: his mother, mother-in-law, and his daughter. *See Id.*

---

[4] Although counsel for the UST and the Debtor appeared in person at the hearing, Debtor's counsel, Vicki Piontek, appeared remotely without complying with L.B.R. 9074-1, *see* Dkt. # 74, Notice setting hearing, as she was erroneously under the impression that the hearing was to be argument only and therefore, she was not required to be present for the hearing in person.

[5] The only witness to testify at the April 18th hearing was Debtor Gregory Simon. Debtor did not provide any documentation to support his testimony.

3

On September 20, 2023, Debtor moved to extend the automatic stay ("Motion to Extend Stay"), because his previous Chapter 13 case, Case No. 19-3954, had been dismissed in January 2023 for failure to make plan payments. *See* Dkt. # 9. Fay Servicing filed an objection to the Motion to Extend Stay, asserting that Debtor's previous case and the current case had been filed to delay foreclosure, Debtor's schedules showed no present ability to cure the approximately $109,000 of pre-petition mortgage arrears or confirm and fully perform a Chapter 13 plan, and that the case had not been filed in good faith. *See* Dkt. # 40. In advance of the hearing, Debtor filed an amended Affidavit in Support of the Motion to Extend Stay, in which Debtor stated that his adult son agreed to live with him and contribute $2,000 a month. *See* Dkt. # 41. This contribution was not included on the Debtor's Schedule I. The Court held a preliminary hearing on the Motion to Extend Stay and continued the matter for an evidentiary hearing. *See* Dkt. # 42.

On September 28, 2023, Debtor filed his initial Chapter 13 Plan, which contemplated payments totaling $120,000 (monthly payments of $2,000 over 60 months) with $60,000 earmarked for payment to mortgage arrears. *See* Dkt. # 29. Fay Servicing objected to the Plan. *See* Dkt. # 44.

Faced with contested hearings on confirmation and the Motion to Extend Stay, Debtor moved to convert his case to Chapter 7.[6] Dkt. # 45. Debtor indicated that his "circumstances have changed so that he is now more suited for a Chapter 7 Bankruptcy" and he has been approved for a mortgage modification. *See Id.* The case was converted on November 1, 2023. *See* Dkt. # 49. Presumably due to the conversion of the case, Fay Servicing withdrew its objection to the Motion to Extend Stay and the Court granted the Motion to Extend Stay. *See* Dkt. # 57, 59.

---

[6] The initial motion indicated that Debtor was in a Chapter "17" case. Debtor filed an amended motion to convert on October 26, 2023 correcting this careless error. Dkt. # 47.

4

On November 30, 2023, just two months after he filed his original schedules and less than a month after converting to Chapter 7, Debtor filed amended Schedules I and J. Dkt. # 54, 55. Although Debtor filed an amended Schedule I, it does not contain any changes and his monthly income of $7,610.75 remained the same. However, Debtor's expenses on amended Schedule J increased by $4,128 per month, which resulted in Debtor's "net" monthly income decreasing from a positive $2,501.75 to a negative $1,626.25 in just a 2 month span.[7]

The most significant increase affected his mortgage payment, which increased by $1,900 – going from $2,300 to $4,200 per month. Debtor was approved for a mortgage modification agreement.[8] 4/18/23 Transcript at 10:40.[9] The $4,200 monthly payment was to continue until the loan was paid in full. He defaulted on these payments.[10] *Id.* at 10:41.

The remaining increase in expenses of $2,228 were increases in many of Debtor's monthly line-item expenses. However, these amendments were inaccurate. Debtor overstated his home repair expenses on Line 4c. His actual expense is $200 per month, not $500 per month. *Id.* at 10:43; 10:45. The Debtor listed $1,000.00 for food and housekeeping supplies on Line 7. These expenses were overstated. *Id.* at 10:49. The $200.00 expense listed for personal care products and services on Line 10 was not accurate. *Id.* at 10:51. The $400.00 expense listed for medical and dental care on Line 11 was overstated. *Id.* The $1,000.00 expense listed for transportation on Line 12 was overstated. *Id.* at 10:51; 11:31; 11:52. The $200.00 expense listed for entertainment on Line 13 was overstated. *Id.* Debtor was also unable to identify the specific

---

[7] As the Court will analyze below, it is difficult to reconcile the Debtor's original disclosed expenses having a household of 4 persons to the increased amended expenses with only 2 persons. It is apparent to the Court that the Debtor either didn't disclose all of his monthly expenses in the first instance or he has inflated his amended expenses in order to justify being in a Chapter 7 case.

[8] Curiously, this mortgage modification was entered into *pre-petition* but was not reflected on his original Schedule J.

[9] The hearing has not been transcribed, therefore, references to the audio recording shall be referred to hereinafter as "Tr." with the corresponding time of day of the hearing.

[10] The Debtor indicated that his adult son had contributed $1,000 per month for some unspecified period to assist his father in paying the mortgage.

5

expenses that comprised the $309.00 figure listed on Line 21 for miscellaneous expenses. *Id.* at 10:52; 11:50.[11]

Amended Schedule J, which again, was filed just two months after he filed his schedules, also removed two of Debtor's dependents, his mother and mother-in-law, leaving his daughter as his only dependent.[12] Debtor's daughter is a 22 year old, full-time college student, who resides in an apartment near her school.[13] *Id.* at 10:49 – 10:54. She comes home approximately every other weekend. *Id.* at 10:54. She was scheduled to graduate in May, 2024. *Id.* As of the time of the hearing, Debtor lived alone most of the time.

Lastly, on March 26, 2024, Fay Servicing moved for relief from the automatic stay in order to continue its foreclosure of Debtor's Residence ("Motion for Relief"). *See* Dkt. # 72. In the Motion for Relief, Fay Servicing indicated that the current monthly payment on the mortgage was $2,381.06 and Debtor had failed to make contractual monthly payments from April 2021 through March 2024. The total due under the mortgage as of March 11, 2024 was $577,781.39. At the hearing, Debtor conceded that he had no defense to the motion and the Motion for Relief was granted on May 2, 2024. Dkt. # 82.

## IV. LEGAL ANALYSIS

The UST's Motion to Dismiss seeks to dismiss Debtor's case alleging it is a "bad faith" filing under Sections 707(a) and/or 707(b)(3)(B) and requests a one-year bar to refiling. The Court will address each statutory basis below.

---

[11] While Debtor's Counsel attempted to rehabilitate some of Debtor's testimony regarding the overstatement of his monthly expenses on the amended Schedule J, Counsel submitted no documentary evidence of those expenses to support any of Debtor's testimony. Further, Debtor provided no explanation (other than the alleged increased mortgage payment) on how his monthly expenses increased by over $4,000 from the original Schedule J filed in this case only 2 months prior.
[12] No record was developed to explain these glaring and substantial changes.
[13] Debtor acknowledged that he has no legal duty to support his adult daughter.

6

### A. **Debtor's Case is an Abuse of the Bankruptcy Code under 11 U.S.C. §707(b)**

The UST has moved to dismiss the Debtor's case for "abuse" under Section 707(b)(3)(B). The UST's argument for dismissal centers primarily on Debtor's monthly expenses, which the UST finds to be excessive and unreasonable. If Debtor's expenses were reduced in conformity with IRS standards, the UST argues that Debtor would have sufficient disposable income to repay a significant portion of his unsecured debts through a Chapter 13 plan. According to the UST's calculations, approximately $4,613 of Debtor's claimed expenses are unreasonable or unnecessary in the context of a Chapter 7 case where Debtor is living alone and his adult daughter is home only every other weekend.[14] The UST's figures are based on the National Standards, which are "tables that the IRS prepares listing standardized expense amounts for basic necessities." *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 66 (2011).

In response, Debtor acknowledges that many of the expenses on amended Schedule J were inaccurate but he argues he also provided reasonable grounds for many of the amounts stated. Debtor's Counsel suggested that Debtor was nervous and confused when attempting to answer the UST's questions. Counsel believes, if she had been given the opportunity, she would have been able to develop Debtor's testimony to establish that the expenses were not "wildly inaccurate" as the UST argued.[15]

Section 707(b)(1) provides that "the court ... may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, ... if it finds that the

---

[14] The $4,613 in excessive expenses is comprised of: Housing expense - $3,251; Utilities - $301; Food, housekeeping supplies, apparel, personal care products, and miscellaneous - $266; transportation and vehicle insurance - $628; medical and dental - $167. UST Brief at 10-11.

[15] Debtor's Counsel takes issue with the Court's ruling regarding the use of leading questions. Counsel had a full opportunity to question her client and should have been able to adjust her method of inquiry to fashion questions that were not leading in order to elicit the relevant evidence.

granting of relief would be an abuse of the provisions of this chapter." Section 707(b)(3)(B) provides, in relevant part, that:

> In considering under paragraph (1) of whether the granting of relief would be an abuse …, the court shall consider –
>> (B) [whether] the totality of the circumstances ... of the debtor's financial situation demonstrates abuse.

11 U.S.C. §707(b)(3).

Here, as the moving party, the UST bears the burden of proving by a preponderance of the evidence that the filing of the petition constitutes abuse based upon the totality of the circumstances. *In re Ramsay*, 440 B.R. 85, 90 (Bankr. M.D. Pa. 2010); *In re Miller*, 335 B.R. 335, 339 (Bankr. E.D. Pa. 2005). In identifying what constitutes "abuse," Courts have considered a debtor's future income and expenses as well as his financial circumstances when the petition was filed. *In re Lipford*, 397 B.R. 320, 328 (Bankr. M.D.N.C. 2008) (citation omitted).

As Judge France found in *In re MacNamara*, 2009 WL 1606985, at *3 (Bankr. M.D. Pa. 2009), a debtor's ability to repay his or her debts is an important factor but should be considered along with several other factors, including:

> (1) whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment; (2) whether the debtor made consumer purchases far in excess of his ability to repay; (3) whether the debtor's proposed family budget is excessive or unreasonable; (4) whether the debtor's schedules and statements of current income and expenditures reasonably and accurately reflect his true financial condition; (5) whether the bankruptcy petition was filed in bad faith; (6) whether the debtor engaged in eve of bankruptcy purchases; (7) whether the debtor enjoys a stable source of future income; (8) whether he is eligible for adjustment of his debts through chapter 13 of the Bankruptcy Code; (9) whether there are state remedies with the potential to ease his financial predicament; (10) the degree of relief obtainable through private negotiations; and (11) whether the

8

> debtor's expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities.

*MacNamara*, 2009 WL 1606985, at *3. The Court's analysis under Section 707(b)(3)(B) should be focused on the totality of the circumstances regarding the debtor's "financial condition." *In re Trotta*, 597 B.R. 269, 281 (Bankr. E.D. Pa. 2019).

In applying these factors to this case, it is clear that the Debtor's stated monthly expenses of $9,237, for a single retired individual living alone most of the time, are excessive and unreasonable under the "totality of the circumstances." While the Debtor appeared to testify credibly, he could not explain how his monthly expenses increased by $4,128 from his original Schedule J. Further, given that his mortgage lender obtained relief from the automatic stay in May based upon the Debtor's payment defaults, the Debtor, to the extent he made any such payments, is no longer paying the stated $4,200 per month mortgage payment and $500 in estimated repairs.

The IRS standard for housing for a family of 2 in Monroe County is $1,449. UST Brief at 10, n. 6.[16] "A debtor's budget may be excessive or unreasonable based on a high mortgage payment." *Ramsey,* 440 B.R. at 95 (quoting *In re Myers*, 2009 WL1456921, *4 (Bankr. M.D.N.C. 2009) (other citations omitted). Here, the Debtor's stated housing expense of $4,700 is clearly excessive.[17]

---

[16] While the IRS standard allowance does not set a ceiling for a Chapter 7 debtor, it is helpful in assessing what is considered reasonable for housing expenses. *Ramsey*, 440 B.R. at 85, n. 12. *See also In re Heath*, 551 B.R. 877 (Bankr. D. Colo. 2016) (housing costs are to be considered in evaluating the totality of the circumstances).

[17] In addition to the excessive housing expenses, the Court agrees with the UST that the following expenses are also excessive: Utilities - $301; Food, housekeeping supplies, apparel, personal care products, and miscellaneous - $266; transportation and vehicle insurance - $628; medical and dental - $167. These expenses total $1,362.00. *See* UST Brief at 10-11.

The Court finds that after deducting the Debtor's excessive expenses, the Debtor's total "allowed" expenses should be reduced to $4,624 per month as calculated below:

| | |
|---|---:|
| Total Expenses per Amended Schedule J | $9,237 |
| Less: excessive housing costs | 4,700 |
| Less: excessive other expenses | 1,362 |
| Plus: allowed standard housing costs | 1,449 |
| Allowed Monthly Expenses | $4,624 |

Several of the factors identified above also require the Court to review the Debtor's income. The Debtor did not discuss his income at the hearing. From the original and amended Schedules I, the income remained the same at $7,610.75. As the Debtor is retired, this income is derived from social security and pension/retirement sources. There is nothing in the record to indicate that these amounts would fluctuate in the future. In deducting the allowed expenses of $4,624, the net monthly income of the Debtor would be $2,986.75. This net income is more than sufficient to fund a chapter 13 plan that could pay the Debtor's unsecured creditors in full.[18] Accordingly, the Court finds that the UST has demonstrated by a preponderance of the evidence that the filing of this case and now attempting to obtain a Chapter 7 discharge constitutes an abuse.

### B. Debtor's Case Was Filed in Bad Faith Pursuant to 11 U.S.C. §707(a)

In addition to the claim of abuse under 11 U.S.C. §707(b)(3)(B), the UST has moved for dismissal for "cause" under 11 U.S.C. §707(a). Section 707(a) provides for three (3) non-exclusive grounds for dismissal. Although not stated explicitly, the Third Circuit has instructed

---

[18] The Debtor's ability to repay all of his unsecured debts is a fundamental concern when assessing a motion to dismiss under §707(b)(3). *In re Trotta*, 597 B.R. 269, 283 (Bankr. E.D. Pa. 2019) (citations omitted).

that the court should also determine whether the debtor demonstrated "good faith" in the filing of the chapter 7 case. *In re Tamecki*, 229 F.3d 205, 207 (3d Cir. 2000). The question of whether a filing was made in bad faith is a fact-intensive inquiry committed to the sound discretion of the bankruptcy court. *In re SGL Carbon*, 200 F.3d 154, 159 (3d Cir. 1999). In determining whether a petition has been filed in good faith, the non-exclusive factors to consider are:

> the nature of the debt ...; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors.

*In re Myers*, 491 F.3d 120, 125 (3d Cir. 2007)(quoting *In re Love,* 957 F.2d 1350, 1357 (7th Cir. 1992)).

Once a party calls into question a petitioner's good faith, the burden shifts to the petitioner to prove his good faith. *See In re Marks*, 174 B.R. 37, 40 (Bankr. E.D. Pa. 1994) (*citing In re Sky Group Int'l, Inc.,* 108 B.R. 86, 90 (Bankr. W.D. Pa. 1989) ("Once the good faith issue is placed in question, the party bringing the petition has the burden of proving that the petition was brought in good faith.").

The UST argues that "cause" exists because, *inter alia*, (1) Debtor's mortgage debt of $577,112.90 comprises 96.40% of his debt; (2) the timing of the filing was to delay the foreclosure of Debtor's Residence; (3) this was the Debtor's 6th case in 11 years; (4) he failed to complete plan payments in all of the prior cases; and (5) although the Debtor appeared to testify credibly, his amended Schedule J signed and filed under penalties of perjury, was "wildly inaccurate." UST Brief at 5. The UST maintains that all of these factors lead to the conclusion that the Debtor's filing was in bad faith under §707(a). *See In re Tamecki*, 229 F.3d 205 (3d Cir.

2000) (good faith is an implicit jurisdictional prerequisite to filing for Chapter 7 relief). After evaluating all of the circumstances, the Court agrees.

Significantly, the UST argues that Debtor's 5 prior cases are a clear indication of bad faith. *See* UST Brief at 6.[19] The UST cites to Debtor's 5 prior cases filed in 2013, 2014, 2016 (2), and 2019 that were all dismissed as evidence of such bad faith. UST Brief at 3. The Debtor's 5 prior cases were all dismissed because of either failing to make required plan payments, failure to file required documents or failure to comply with a payment stipulation. As referenced by the UST, between 2013 and the present, 2018 is the only year the Debtor has not been protected by the Bankruptcy process. UST Brief at p. 8.

Serial filings should be weighed in considering the totality of circumstances. A history of serial filings and dismissals can be evidence of bad faith. *Lucabaugh v. I.R.S.,* 2001 WL 997416, at *3 (E.D. Pa. 2001); *In re Dami,* 172 B.R. 6, 10 (Bankr. E.D. Pa. 1994). A debtor's pre-petition conduct and "the frequency with which the debtor has sought previous bankruptcy relief" are elements of the debtor's "total circumstances." *Society National Bank v. Barrett (In re Barrett),* 964 F.2d 588, 592 (6th Cir. 1992); *In re Kitchens,* 702 F.2d 885, 889 (11th Cir. 1983). A non-exhaustive list of factors to consider when multiple filings are involved includes the following:

> (1) the length of time between the prior cases and the present one;

---

[19] The Court may take judicial notice under Fed. R. Evid. 201 (incorporated into bankruptcy cases by Fed. R. Bankr. P. 9017), of their own dockets, including the bankruptcy petition, schedules, and statement of financial affairs filed in this case and the Debtor's prior cases. *See Maritime Elec. Co., Inc. v. United Jersey Bank,* 959 F.2d 1194, 1200 n. 3 (3d Cir. 1991); *Levine v. Egidi,* 1993 WL 69146, at *2 (N.D. Ill. 1993); *In re Harmony Holdings, LLC,* 393 B.R. 409, 413-14 (Bankr. D.S.C. 2008); *In re Paolini,* 1991 WL 284107, at *12 n. 19 (Bankr. E.D. Pa. 1991); *see generally Nantucket Investors II v. California Federal Bank. (In re Indian Palms Assoc., Ltd.*), 61 F.3d 197 (3d Cir. 1995). Although the Court may not take judicial notice of facts contained in the debtors' files that are in dispute, *In re Augenbaugh,* 125 F.2d 887 (3d Cir. 1942), the Court may take judicial notice of adjudicative facts "not subject to reasonable dispute ... [and] so long as it is not unfair to a party to do so and does not undermine the trial court's fact finding authority." *Indian Palms,* at 205. Accordingly, the Court takes judicial notice of the Debtor's filings in this case, as well as the dockets in the Debtor's 5 prior cases before this Court.

> (2) whether the successive cases were filed to obtain favorable treatment afforded by the automatic stay;
> (3) the effort made to comply with prior case plans;
> (4) the fact that Congress intended the debtor to achieve its goals in a single case; and
> (5) any other facts the court finds relevant relating to the debtor's purposes in making successive filings.

*In re Dami*, 172 B.R. 6, 10 n. 5 (Bankr. E.D. Pa. 1994) (quoting *In re Oglesby*, 158 B.R. 602, 607 (E.D. Pa. 1993)). The UST argues that based upon the "totality of the circumstances", Debtor's case should be dismissed with a 1 year bar to refiling.

The Debtor counters by arguing that each of his 6 filings were in good faith. Debtor states that he successfully obtained a loan modification ($4,200 per month) and made 3 payments before defaulting because he helped his daughter with her college expenses. During examination by his counsel, Debtor did attempt to provide support for his amended Schedule J expenses. However, the Debtor provided no documents to support any of his expenses[20] and no explanation for the $4,128 increase from the original filed Schedule J.

Based upon the totality of the circumstance, the Court finds ample cause that Debtor's 6th bankruptcy filing was not in good faith.[21] The UST also seeks a 1 year bar on refiling by the Debtor. Here, the Court notes that the mortgage lender has already received relief from the stay and the Debtor did pay over $70,000 to the Chapter 13 Trustee in his 2019 prior case. Accordingly, the Court finds that a 180 day bar to refiling is justified.

---

[20] Debtor attached to his Brief an Affidavit of the Debtor and an alleged repair estimate from a contractor indicating the Residence needs $51,475.00 in repairs. Dkt. #85-1 and 85-1. These documents were submitted after the hearing and will not be considered by the Court. However, the estimate would seem to undercut Debtor's argument that his Chapter 13 filing was a good faith effort to save his home. Nothing in the record would indicate the Debtor had the ability to pay over $50,000 in home repairs in addition to the alleged modified mortgage amount of $4,200.

[21] In making this conclusion, the Court has also considered that the Debtor's bankruptcy history has allowed him to incur an additional $300,000 in interest and expenses on his mortgage and the filing of his amended Schedule J was materially inaccurate.

## V. CONCLUSION

Based upon all the reasons set forth above including, *inter alia*, the Debtor's filing of six (6) bankruptcy cases since 2013 and his inability to successfully conclude any of them, and his materially inaccurate reporting of his expenses, the Court concludes that cause exists to find that the (i) Debtor's case be dismissed under 11 U.S.C. §707(a) and §707(b)(3)(B); and (ii) Debtor is barred from refiling a bankruptcy for a period of 180 days.

An appropriate order will be entered.

By the Court,

_____
Mark J. Conway, Bankruptcy Judge
Dated: January 3, 2025